UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 5:10-cr-90-1 |
| | ) |
| JACKSON NKESHA, | ) |
| a.k.a. Omar Musoke Nsereko | ) |

**OPINION AND ORDER
REQUIRING ADDITIONAL BRIEFING REGARDING
DEFENDANT'S MOTION TO DISMISS INDICTMENT**
(Doc. 27)

This matter came before the court on February 1, 2011 for oral argument on Defendant Jackson Nkesha's motion to dismiss the Indictment against him. Defendant is charged with attempting to enter the United States as a previously deported alien who had not obtained the consent of the U.S. Attorney General to reapply for admission, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). He seeks to collaterally attack his underlying removal order under 8 U.S.C. § 1326(d), arguing that he was denied an opportunity for judicial review of his removal order and that an Immigration Judge's ("IJ") refusal to grant him a continuance was fundamentally unfair. Although he does not specifically allege ineffective assistance of immigration counsel, Defendant asserts that "under the totality of the circumstances [ineffective assistance of counsel] does bear upon his subjective belief regarding the procedural options available to him." (Doc. 41 at 3, n.3.)

The Government opposes Defendant's motion, arguing that denial of a continuance has never been deemed a fundamental procedural error and that Defendant had ample opportunities to seek judicial review.

The parties completed their post-hearing briefing on March 3, 2011. The Government is represented by AUSA Wendy L. Fuller. Defendant is represented by Alison S. Arms, Esq.

I.     **Factual and Procedural Background.**

Defendant, a citizen of Rwanda, became a permanent resident of the United States in April 2004. He alleges that he is married to a United States citizen, that his children are United States citizens, and that he lost all of his other family members in the Rwandan genocide.

On February 2, 2007, while he was attempting to enter the United States from the United Kingdom, immigration officials detained Defendant at Logan Airport in Boston, Massachusetts based upon Defendant's recent state court criminal convictions. These included a January 25, 2007 Massachusetts state court conviction for witness intimidation, in violation of Mass. Gen. Laws ch. 268, § 13B(1), and a conviction for violating an abuse prevention order, in violation of Mass. Gen. Laws ch. 209A, § 7. Defendant's witness intimidation conviction was vacated on August 18, 2008 on the ground of ineffective assistance of counsel and lack of supporting evidence. Defendant has recently renewed his motion to vacate his conviction for violating an abuse protection order. That motion was denied by the trial court. Defendant's appeal of the denial is presently pending before the Massachusetts Supreme Judicial Court.

On March 5, 2007, the Department of Homeland Security ("DHS") served Defendant with a Notice to Appear, charging that he was inadmissible under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), for committing crimes involving moral turpitude ("CIMT"), based on his state court criminal convictions. At the time of his removal hearing, Defendant's motion to vacate his criminal convictions was pending.[1]

Defendant was represented by an attorney at the removal hearing, which took place in Boston, Massachusetts on June 23, 2008. On the day of his removal hearing, Defendant sought a continuance in light of his pending motion to vacate the convictions which formed the basis of the removal petition. The record before this court does not reveal what evidence, if any, was presented in support of Defendant's motion for a

---

[1] The motion to vacate appears to have been filed on June 18, 2008.

2

continuance, or whether the motion was oral or written.[2] It is also unknown whether Defendant's counsel advised the IJ that Defendant's motion to vacate his state court convictions was pending, and whether counsel advised that there was a likelihood that Defendant would at least partially prevail on his motion to vacate. The speed with which the Massachusetts trial court vacated Defendant's witness intimidation conviction, approximately fifty-six days after the continuance was sought (and sixty-one days after the motion to vacate was filed), underscores the importance of this information. Finally, it is not known whether Defendant's immigration counsel challenged whether Defendant's state court convictions were accurately characterized as CIMTs.

On June 23, 2008, the IJ denied the motion to continue as follows: "Motion to Continue pending collateral attack on conviction is denied." (Doc. 41-1 at 10.) This handwritten entry was made on a two-page pre-printed form that constituted the IJ's Memorandum of the Court's Decision and Orders (the "Removal Order"). The Removal Order states that it "is solely for the convenience of the parties" and that "[t]he oral or written Findings, Decision and Orders is the official opinion in this case." *Id.* The IJ ordered Defendant removed to Rwanda.

At the removal hearing, Defendant waived his right to appeal the Removal Order to the Board of Immigration Appeals ("BIA"). There is no evidence before the court regarding what, if any, advice Defendant received from either the IJ or his counsel regarding his right to appeal the Removal Order.

Defendant's immigration counsel advised Defendant that he had thirty days to file a motion to reopen the removal proceedings. Defendant relied on that representation in concluding that his state court conviction was vacated too late to provide the grounds for a motion to reopen. After Defendant's conviction for witness intimidation was vacated, Defendant's immigration counsel did not seek to reopen the removal proceedings on the ground that the only remaining conviction was not a CIMT. Defendant was removed from this country on December 9, 2008.

---

[2] Neither the transcript of the removal hearing, nor the full record before the IJ, has been submitted to this court.

On May 26, 2010, Defendant allegedly re-entered the United States at the Highgate Springs, Vermont port of entry without permission of the U.S. Attorney General to reapply for readmission. On June 17, 2010, a Vermont federal grand jury returned a one count Indictment charging Defendant with attempting to enter the United States without permission, after having previously been deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).

On October 19, 2010, Defendant filed a motion to reopen his removal proceedings. An IJ denied the motion on November 18, 2010, ruling that even if Defendant's conviction for a violation of an abuse prevention order was not a CIMT, the IJ lacked jurisdiction to reopen removal "because the Respondent was removed from the United States." (Doc. 37-2 at 2.) The IJ declined to apply the principle of equitable tolling because "although equitable tolling may apply in cases of ineffective assistance of counsel, the Respondent alleges no ineffective assistance of counsel in his immigration proceedings, only in criminal proceedings." (Doc. 37-2 at 2-3.) On December 17, 2010, Defendant appealed the denial of his motion to reopen to the BIA, arguing that the IJ was incorrect in concluding that the "departure bar" deprived the IJ of jurisdiction and that Defendant was not eligible for equitable tolling. That appeal is pending.

## II. Conclusions of Law and Analysis.

### A. The Requirements for a Collateral Attack on the Indictment.

Defendant moves to dismiss the Indictment, pursuant to 8 U.S.C. § 1326(d), claiming that the Removal Order was unlawful. Section 1326(d) of Title 8 permits an alien charged with illegal reentry under 8 U.S.C. § 1326(a) "to challenge the underlying deportation order on which the illegal reentry charge is based." *United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006) (citation omitted). Section 1326(d) codifies the Supreme Court's decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), wherein the Court declared that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-38 (citations omitted).

4

A defendant's "collateral attack on the validity of the [underlying] removal order is a *defense to prosecution* and the burden of proof is properly allocated *to the Defendant*." United States v. Minotta-Caravalle, 2010 WL 4975643, at *3 (D. Vt. Nov. 30, 2010) (citation omitted); *see also* United States v. Copeland, 376 F.3d 61, 66 (2d Cir. 2004) ("An alien can *defend against* [the charge of illegal reentry] by challenging the validity of the deportation order upon which the charge is predicated.") (emphasis supplied). Section 1326(d) provides:

> In a criminal proceeding [for illegal reentry], an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "The requirements are conjunctive, and thus [a defendant] must establish all three in order to succeed in his challenge to his removal order." *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

Defendant asserts that he has established all three prongs of § 1326(d). Although the Government does not concede that Defendant exhausted his administrative remedies under § 1326(d)(1), it acknowledges that the Second Circuit ruled in *Copeland*, 376 F.3d at 67 n.4, that even an untimely motion to reopen and an appeal of the denial of that motion can constitute exhaustion of administrative remedies. The court so finds. The Government nonetheless contends that Defendant cannot further demonstrate that he was deprived of the opportunity for judicial review, and that entry of the deportation order was fundamentally unfair.

### B. Section 1326(d)(2): Whether Defendant was Denied the Opportunity for Judicial Review.

Under § 1326(d)(2), a defendant must demonstrate that he was denied the opportunity for judicial review of his removal order. Courts in the Second Circuit have

5

found such a denial where a defendant's opportunity for judicial review was impacted by ineffective assistance of immigration counsel. *See United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003); *United States v. Garcia*, 2008 WL 3890167, at *12 (E.D.N.Y. Aug. 19, 2008). In this case, Defendant alleges that his immigration counsel advised him that he had only thirty days in which to move to reopen his removal proceeding. If given, this advice was incorrect as Defendant had ninety days within which to file a motion to reopen. *See* 8 C.F.R. § 1003.23(b)(1). Within that ninety day period, Defendant asserts that any conviction that could arguably qualify as a CIMT had been vacated.

The Government counters that even if this is true, Defendant's proper avenue of relief was through an appeal of the Removal Order, which he waived. Thereafter, he waited not months but years to seek judicial review. While the Government's argument has some force, no evidence regarding the Defendant's initial waiver of appeal has been presented to the court. It, too, may have been the product of ineffective assistance of counsel as Defendant's immigration counsel knew, or should have known, that Defendant's motion to vacate was pending and knew, or should have known, that Defendant's underlying conviction for a violation of an abuse protection order was not a CIMT.[3] Defendant thus waived the right to appeal the Removal Order while the facts underpinning the Removal Order were still in flux and, if modified, could have resulted in the denial of removal. *See Gill v. INS*, 420 F.3d 82, 89-91 (2d Cir. 2005) (determining, on petition for review, whether underlying conviction was a CIMT, finding that it was not, and reversing BIA's removal order).

In addition, ineffective assistance of counsel has been deemed sufficient to equitably toll the ninety day deadline for a motion to reopen, provided the alien has

---

[3] As Defendant correctly points out, in Massachusetts, violation of an abuse prevention order requires no showing of scienter other than knowledge that the order existed. *See Commonwealth v. Rauseo*, 740 N.E.2d 1053, 1058-59 (Mass. App. Ct. 2001). "'Moral turpitude' is a term used to refer to offenses that are 'inherently base, vile, or depraved.'" *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005) (quoting *Hamdan v. INS*, 98 F.3d 183, 186 (5th Cir. 1996)); *see also Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 109 n.3 (2d Cir. 2007) ("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.") (internal quotation marks and citation omitted); *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) ("[C]orrupt scienter is the touchstone of moral turpitude.").

exercised due diligence. *See Cekic v. INS*, 435 F.3d 167, 170 (2d Cir. 2006). The possibility that Defendant's immigration counsel rendered ineffective assistance also calls into question whether Defendant had sufficient time to seek habeas review. *See Lopez*, 445 F.3d at 99 ("While the interval of time in which it is realistically possible for an alien [to] seek judicial review may be quite short where the alien had not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief."); *see also United States v. Cerna*, 603 F.3d 32, 40 (2d Cir. 2010) (holding question of whether alien has been deprived of judicial review must be considered in the context of whether counsel was ineffective and further finding "an immigration attorney has an obligation to keep his client informed of relevant dates and decisions, and the attorney's failure to do so can constitute ineffective assistance of counsel."); *United States v. Clinton*, 653 F. Supp. 2d 446, 451 (S.D.N.Y. 2009) (misinformation from IJ, BIA, and defendant's attorney regarding the availability of relief rendered habeas petition not realistically available and excused failure to move to reopen case).

Defendant asks the court to consider the alleged errors of his immigration counsel as part of the "totality of the circumstances." He has not, however, provided the court with sufficient information with which to do so. In light of the importance of this constitutional claim, *see Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008), rather than finding that Defendant has waived an ineffective assistance of immigration counsel claim by raising it only indirectly, the court hereby GRANTS Defendant forty-five (45) days to supplement this claim with facts sufficient to sustain it. In the event Defendant pursues this option, the Government shall have fourteen (14) days thereafter to file a memorandum in opposition. In addition, either party may request an evidentiary hearing.

### C. Section 1326(d)(3): Whether Entry of the Removal Order was Fundamentally Unfair.

To avoid duplication of judicial efforts, the court briefly addresses the further question of whether a failure to grant a continuance can ever rise to the level of a denial of due process. "Although the Supreme Court has not specifically delineated the

procedural safeguards to be accorded aliens in deportation or removal hearings, it is well settled that the procedures employed must satisfy due process." *Fernandez-Antonia*, 278 F.3d at 156 (citations omitted). "To show fundamental unfairness [under Section 1326(d)(3)], a defendant 'must show both a fundamental procedural error and prejudice resulting from that error.'" *Perez*, 330 F.3d at 104 (quoting *Fernandez-Antonia*, 278 F.3d at 159). If the alien would have been deported "even after a procedurally perfect proceeding," he will not be successful on collateral review. *Fernandez-Antonia*, 278 F.3d at 159.

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. The Second Circuit reviews "an IJ's grant or denial of a continuance . . . for abuse of discretion." *Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006). An IJ abuses his or her discretion if the decision rests on an error of law, a clearly erroneous factual finding, or "cannot be located within the range of permissible decisions." *Dedji v. Mukasey*, 525 F.3d 187, 191-92 (2d Cir. 2008) (internal quotation marks and citation omitted).

In *United States v. Adame-Orozco*, 607 F.3d 647 (10th Cir. 2010), a defendant sought to collaterally attack his removal order under § 1326(d)(2), arguing that the IJ did not afford him sufficient time before removal to collaterally attack his state court criminal convictions. The defendant further claimed that the denial of his motion for a continuance foreclosed his opportunity for judicial review and rendered his removal proceedings fundamentally unfair under § 1326(d)(3). In evaluating the defendant's arguments, the court opined that § 1326(d)

> does not speak of, let alone specify, any right in an illegal reentry proceeding to pursue a collateral attack on any *other* orders, judgments, or proceedings. And it supplies no stay of deportation while appellate or habeas proceedings may be ongoing in other matters. This doesn't mean, of course, that an alien lacks the opportunity to appeal or collaterally attack [the underlying] conviction. . . . It merely means that he must do so in the traditional way, pursuant to state and federal laws governing criminal appeals and collateral review—and not in an illegal reentry prosecution.

8

*Id.* at 652. The Government urges the court to find *Adame-Orozco* persuasive in this case and to conclude that because there is no right to collaterally attack an underlying conviction, there is also no right to a continuance in order to launch such an attack. Defendant counters that other courts have taken a more lenient approach:

> Whether a denial of a continuance constitutes an abuse of discretion must be evaluated on a case by case basis; it "cannot be decided through the application of bright line rules." When reviewing an IJ's denial of a continuance, we consider a number of factors, including: (1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted.

*Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009) (citations omitted).

The Second Circuit's approach is more closely aligned to that of the Ninth Circuit and starts with the premise that it is impossible to review a denial of a continuance for an abuse of discretion in the "absence of standards that reflect the various situations of those seeking continuances." *Rajah v. Mukasey*, 544 F.3d 449, 450 (2d Cir. 2008) (holding that record was insufficient to determine whether IJ abused his discretion in denying a continuance while the petitioner's labor certification was pending); *Ghoniem v. Mukasey*, 305 F. App'x 738, 740 (2d Cir. 2009) (vacating BIA's order of removal and remanding for further proceedings to provide "a quantum by which better to measure the reasonableness of a petitioner's request for a continuance, and a clearer demarcation of the range of permissibility to be exercised by the IJ.") (citation omitted); *see also Farooq v. Holder*, 339 F. App'x 37, 38 (2d Cir. 2009) ("We find that the BIA abused its discretion here because the BIA ignored significant new legal developments concerning IJ's denials of continuances in removal proceedings."). The Fifth and Seventh Circuits have also recognized that the absence of standards governing continuances in removal proceedings may result in an abuse of discretion. *See Hing Chuen Wu v. Holder*, 571 F.3d 467, 469-70 (5th Cir. 2009) (remanding denial of continuance to allow IJ to reconsider denial in light of BIA's five non-exclusive factors governing continuances when an I-130 visa petition is pending); *Subhan v. Ashcroft*, 383 F.3d 591, 593-95 (7th Cir. 2004) (ruling that IJ abused his discretion in denying petitioner's third requested

9

continuance without providing a reason for the denial). But like the Second Circuit, they, too, require the facts and circumstances giving rise to the continuance request.

Here, the Removal Order merely states that Defendant's request for a continuance to collaterally attack his convictions is denied. It is thus unclear what, if any, evidence the IJ considered in denying the continuance, and why the continuance was denied rather than granted.

> An abuse of discretion may be found in those circumstances where the [IJ's] decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the [IJ] has acted in an arbitrary or capricious manner.

*Omar*, 517 F.3d at 651 (internal quotation marks and citations omitted). On the limited record before the court, the court cannot determine whether an abuse of discretion occurred, and thus cannot further determine whether it rose to the level of a fundamental procedural error. However, any claim that Defendant suffered no prejudice as a result of the denial of his continuance is without merit. Had Defendant's request for a continuance been granted, in a mere fifty-six days, Defendant's only remaining state court conviction arguably would not have served as a lawful predicate for the Removal Order as it does not appear to be a CIMT. In such circumstances, the "defects in the deportation proceeding may well have resulted in a deportation that would not otherwise have occurred." *Fernandez-Antonia*, 278 F.3d at 159 (internal quotation marks and citation omitted).

Because the parties have provided only a partial record of the proceedings before the IJ, the court is unable to resolve the motion pending before it. The court thus hereby ORDERS the parties to file the full record before the IJ, including the transcript or recording of Defendant's June 23, 2008 removal proceeding, within forty-five (45) days of this Order.

10

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of March, 2011.

_____
Christina Reiss, Chief Judge
United States District Court